**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **CoBANK, ACB,**<br><br>Plaintiff,<br><br>v.<br><br>**CABLE ONE, INC.,**<br><br>Defendant. | Case No. 26-cv-8935 |

# COMPLAINT

Plaintiff CoBank, ACB ("CoBank"), by and through its undersigned counsel, complains of Defendant Cable One, Inc. ("Cable One" or the "Company") and alleges as follows:

1. CoBank brings this action to prevent Cable One from transferring approximately $480 million in order to purchase equity in Mega Broadband Investments Holdings LLC ("MBI")—equity that Cable One has acknowledged is worth a fraction of $480 million, if not worthless.

2. Cable One is obligated, under a put right held by certain investors affiliated with private equity firm GTCR (the "Put Right"), to acquire a fifty-five percent MBI equity stake—the equity in MBI that Cable One does not already own. Cable One has publicly disclosed that the purchase price payable on exercise of the Put Right (the "Put Price") will be approximately $480 million.

3. Upon information and belief, the closing of that transaction (the "MBI Put Closing") and transfer of this $480 million is scheduled to occur on Friday, October 9, 2026.

4. This transfer of $480 million is for equity Cable One's own Quarterly Report on Form 10-Q for the quarter ended June 30, 2026 (the "Q2 2026 10-Q") values at approximately $54 million. Cable One is therefore aware and has confirmed to the investing public that the Put

Price is grossly disproportionate to the value of the MBI equity Cable One will receive in exchange. The full text of the Q2 2026 10-Q is available at: https://www.sec.gov/Archives/edgar/data/1632127/000163212726000033/cabo-20260630.htm.

5. In its Q2 2026 10-Q, Cable One recorded a $349.8 million non-cash impairment of its existing approximately 45% equity investment in MBI, thereby reducing Cable One's valuation of that stake to approximately $31.8 million.

6. In its Q2 2026 10-Q, Cable One also recorded a current liability of approximately $426.0 million—the "MBI option liability"—against the approximately $480 million Put Price. Thereby, Cable One has told the investing public that the MBI equity it is about to purchase for approximately $480 million is worth, at most, about $54 million.

7. The anticipated transfer is occurring against the backdrop of rapidly deteriorating financial condition at Cable One itself. For the quarter ending June 30, 2026, Cable One suffered a comprehensive loss of approximately $1.16 billion. (Q2 2026 10-Q at 32). Cable One suffered a loss of $204 per common share of stock.

8. For the fiscal year 2025, Cable One suffered a comprehensive loss of $385 million, a loss of $63.21 per share. (2025 10-K at F-4).

9. On January 2, 2026, Cable One's stock price closed at $102.01 on the NYSE; on October 8, 2026 the stock price closed at $15.38 per share.

10. As of June 30, 2026, Cable One had total liabilities of $4.296 billion and stockholder's equity of $326.4 million. (Q2 2026 10-Q at 1).

11. Cable One's total stockholders' equity fell from approximately $1.43 billion at December 31, 2025 to approximately $326.4 million at June 30, 2026. (Q2 2026 10-Q at 1).

12. Cable One is currently insolvent based on standard valuation methodologies.

13. Should this $480 million transfer occur, Cable One would sink deeper into insolvency and make Cable One's remaining assets unreasonably small given its already large debts.

14. This transfer is part of a larger set of executed or contemplated transactions by Cable One that will further degrade its financial condition, as Cable One borrowed the $480 million for this transfer from a revolving credit facility and intends to obtain $1.25 billion, on unfavorable terms, in new financing from the same party to which it plans to pay the $480 million.

15. CoBank is a creditor of Cable One, holding approximately $1.1 billion in outstanding secured loans issued to Cable One.

16. Cable One also owes substantial debt to other creditors, including more than $2 billion to other lenders.

17. Under the Uniform Fraudulent Transfer Act, including the act adopted in Arizona, A.R.S. § 44-1001 *et seq.* ("AFTA"), and Delaware, 6 Del. C. § 1301 *et seq.* ("DUFTA"), a transfer made by a debtor without receiving reasonably equivalent value is avoidable by creditors when the debtor is or will be rendered insolvent or is left with unreasonably small capital. Given Cable One has its principal place of business in Arizona and is organized in Delaware, either Arizona or Delaware law would apply to the fraudulent transfer.

18. Cable One's $480 million transfer to MBI satisfies each of these statutory definitions of a fraudulent transfer.

19. AFTA and DUFTA authorize a creditor to obtain an injunction against the fraudulent transfer and other equitable relief.

20. If Cable One is permitted to transfer $480 million for the MBI equity, CoBank will be immediately and irreparably harmed. As soon as that $480 million leaves Cable One's

possession and control, CoBank's security and its ability to be repaid on its $1.1 billion in outstanding loans will be irreparably compromised.

21. CoBank seeks (a) a declaratory judgment under 28 U.S.C. §§ 2201–2202;

(b) relief under AFTA/DUFTA, including avoidance of the transfer to the extent necessary to satisfy CoBank's claim and an injunction against the transfer; and

(c) an emergency temporary restraining order before the imminent October 9, 2026 MBI Put Closing to preserve the status quo; preliminary injunctive relief pending trial; and a permanent injunction barring the transfer.

**THE PARTIES**

22. Plaintiff CoBank, ACB is a federally chartered Agricultural Credit Bank formed under the laws of the United States of America pursuant to the Farm Credit System. 12 U.S.C. § 2002(a). CoBank maintains its principal office in Greenwood Village, Colorado, and, therefore, is a citizen of Colorado. 12 U.S.C. § 2258. CoBank is a Lender to Cable One under the Credit Agreement (defined below).

23. Defendant Cable One, Inc. is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in Phoenix, Arizona. Cable One is a broadband communications provider and is the "Borrower" under the Credit Agreement.

24. Non-party MBI is a Delaware limited liability company. Cable One currently owns approximately 45% of MBI's equity.

**JURISDICTION AND VENUE**

25. This Court has subject-matter jurisdiction under 28 U.S.C. § 1332(a)(1) because the matter in controversy exceeds $75,000, exclusive of interest and costs, and is between citizens of different states.

26. For purposes of diversity jurisdiction, CoBank is a citizen of Colorado, the state in which it maintains its principal office (12 U.S.C. § 2258). Cable One is a citizen of Delaware, its state of incorporation, and Arizona, the state of its principal place of business. Complete diversity therefore exists.

27. The amount in controversy far exceeds $75,000. The transfer CoBank seeks to void and enjoin is approximately $480 million.

28. This Court is authorized to grant declaratory and further necessary or proper relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, and injunctive relief under Federal Rule of Civil Procedure 65, and A.R.S. § 44-1007 or 6 Del. C. § 1307.

29. This Court has personal jurisdiction over Cable One because Cable One expressly consented to it. In Section 9.09(b) of the Credit Agreement (defined below), each of the parties thereto, including Cable One, "irrevocably and unconditionally submit[ted], for itself and its property, to the exclusive jurisdiction of the courts of the State of New York sitting in New York County and of the United States District Court of the Southern District of New York, and any appellate court from any thereof, in any action or proceeding arising out of or relating to this Agreement or any other Loan Document," and "irrevocably and unconditionally agree[d] that all claims in respect of any such action or proceeding may be heard and determined in such New York State or, to the extent permitted by law, in such Federal court." Credit Agreement § 9.09(b).

30. This action arises out of and relates to the Credit Agreement and the other Loan Documents. CoBank is a creditor under the Credit Agreement, its claim against Cable One arises from its status as a creditor under the Credit Agreement, Cable One's obligations thereunder in respect of CoBank's Term Loans, and CoBank brings this action to protect its ability to be repaid

and prevent Cable One from dissipating the security interests granted to CoBank under the Credit Agreement.

31. Cable One regularly conducts business in New York, as it has entered into multiple agreements with New York entities and received significant financing from multiple financial institutions in New York.

32. Venue is proper in the U.S. District Court for the Southern District of New York because Cable One agreed in Section 9.09(b) of the Credit Agreement that this action may be heard and determined in this Court, and in Section 9.09(c) of the Credit Agreement "irrevocably and unconditionally waive[d], to the fullest extent it may legally and effectively do so, any objection which it may now or hereafter have to the laying of venue of any suit, action or proceeding arising out of or relating to this [Credit] Agreement or any other Loan Document in any court referred to in paragraph (b)," and "irrevocably waive[d], to the fullest extent permitted by law, the defense of an inconvenient forum to the maintenance of such action or proceeding in any such court." Credit Agreement § 9.09(b)–(c). Venue is also proper under 28 U.S.C. § 1391(b)(1) and (c)(2) because Cable One, having consented to personal jurisdiction in this District with respect to this action, resides in this District for venue purposes.

## FACTS

### The Credit Agreement and CoBank's Loans

33. Cable One is the Borrower under that certain Fourth Amended and Restated Credit Agreement, dated as of February 22, 2023, among Cable One, the Lenders party thereto (including CoBank), and JPMorgan Chase Bank, N.A., as Administrative Agent (as amended, restated, supplemented, or otherwise modified from time to time, the "Credit Agreement").

34. CoBank holds approximately $1.1 billion of debt outstanding under the Credit Agreement and owed by Cable One. This total debt includes: (1) $80,946,969.02 outstanding

under a revolving credit facility, with a total commitment of $96,365,439.22; (2) $231,250,000 outstanding under Term Loan B2; (3) $727,926,774.35 outstanding under Term Loan B3; and (4) $80,251,922.76 million outstanding under Term Loan B4.

35. Term Loans B2 and B3 mature and the debt is due and payable on October 30, 2029. Term Loans B2 and B3 may mature earlier — on May 3, 2028 — if more than $150 million of Term Loan B4 (or certain refinancing indebtedness) remains outstanding on that date. The B4 Term Loan also matures and the debt is due and payable in 2028.

**Cable One's Investment in MBI and the Put Right**

36. On September 28, 2020, Cable One entered into an Equity Purchase Agreement with MBI, Mega Broadband Splitter, LP, Mega Broadband Blocker, Inc., and GTCR Fund XII/C LP (the "2020 Equity Purchase Agreement"), pursuant to which Cable One acquired approximately 45% of the equity interest in MBI in November 2020.

37. MBI's governance is set out in the Third Amended and Restated Limited Liability Company Agreement of Mega Broadband Investments Holdings LLC, dated December 20, 2024 (the "MBI LLC Agreement"). The full text of the MBI LLC Agreement is available at: https://www.sec.gov/Archives/edgar/data/1632127/000095015724001698/ex10-1.htm.

38. Under Section 8.8 of the MBI LLC Agreement and Section C of Schedule B thereto, the GTCR Investors have the right to require Cable One to purchase all of the "Non-CABO Investor Units" and "Non-CABO Investor Blocker Interests" for an aggregate amount equal to the "Option Price." MBI LLC Agreement § 8.8; Sched. B § C(a). A Put Exercise Notice could be delivered at any time on or after January 1, 2026. *Id.* Sched. B § C(a).

39. The Option Price is formula-driven. The formula is based on MBI's adjusted EBITDA for the twelve-month period ended June 30, 2025. (Q2 2026 10-Q at 11).

40. As reflected in Cable One's 8-K filed January 5, 2026, the GTCR Investors delivered a Put Exercise Notice to Cable One on January 2, 2026. (2025 8-K at 1). The full text of Cable One's 8-K filed January 5, 2026 is available at: https://www.sec.gov/Archives/edgar/data/1632127/000095015726000007/form8-k.htm.

41. The MBI LLC Agreement provides that within twenty business days following delivery of the Put Exercise Notice, MBI shall prepare an "Option Price Statement" that includes calculations needed to calculate the Option Price. MBI LLC Agreement Sched. B § C(b). Cable One then has an opportunity to object to the calculations in the Option Price Statement. *Id.* If the parties are unable to resolve their disagreement after negotiating in good faith, the MBI LLC Agreement provides the parties will submit the dispute to a third-party valuation firm that is reasonably acceptable to both Cable One and the GTCR Investors. *Id.*

42. Upon information and belief, Cable One did not object to the Option Price Statement prepared by MBI and used by the GTCR Investors to calculate the Option Price.

43. The Put Price payable for the MBI equity Cable One does not already own will be approximately $480 million. (Q2 2026 10-Q at 37).

44. MBI's total net indebtedness at the time it becomes a wholly owned subsidiary of Cable One would be approximately $920 million, in the form of term loans maturing in November 2027. (Q2 2026 10-Q at 37).

45. Upon information and belief, the MBI Put Closing is scheduled to occur on Friday, October 9, 2026.

**Cable One's Own Financial Statements Establish That the MBI Equity Is Worth a Fraction of the Put Price.**

46. On February 26, 2026, Cable One disclosed in its 2025 10-K that paying the Put Right and acquisition of MBI was a primary funding requirement and identified uncertainties

related to the Put Right including "the difference between the Put Price and the fair value of the underlying equity interests" and about Cable One's ability to finance the Put Right on acceptable terms (or at all). (2025 10-K at 26 and 51). The full text of Cable One's 2025 10-K filed February 26, 2026 is available at: https://www.sec.gov/Archives/edgar/data/1632127/000163212726000005/cabo-20251231.htm.

47. During the three months ended June 30, 2026, Cable One recorded a $349.8 million non-cash impairment to the carrying value of its existing investment in 45% of MBI's equity "based on MBI's financial performance and updated forecast information received during the second quarter of 2026." (Q2 2026 10-Q at 12).

48. As a result, the carrying value of Cable One's approximately 45% equity interest in MBI fell from approximately $386.4 million at December 31, 2025 to approximately $31.8 million at June 30, 2026. (Q2 2026 10-Q at 12). Cable One has recorded a "cumulative impairment of its MBI investment" of $476.2 million. (*Id*). Upon information and belief, the fair market value of the 45% of MBI owned by Cable One is not more than $31.8 million and as of the date of filing of this Complaint is substantially less than $31.8 million.

49. During Q2 2026, Cable One recorded a current liability of $425,970,000 labeled "MBI option liability." (Q2 2026 10-Q at 1). Cable One explained that, because the Put Price measurement period has ended and the Put Right has been exercised, "the fair value of the MBI option effectively represents its intrinsic value as of June 30, 2026," and that "[t]he estimated equity value of MBI … continues to be a significant input into the valuation of the MBI option." *Id.* at 21. The fair market value of the 55% of MBI equity Cable One intends to purchase with the Put Right payment was at the time of Cable One Q2 Form 10-Q filing not more than $54 million. Upon information and belief, the fair market value of the 55% of MBI equity that Cable One

intends to purchase with the Put Right payment is as of the date of filing of the Complaint worth substantially less than $54 million.

**Cable One's Deteriorating Financial Condition**

50. Cable One's financial condition has deteriorated sharply. For the three months ended June 30, 2026, Cable One suffered a net loss of approximately $1.16 billion. (Q2 2026 10-Q at 28).

51. Cable One's total stockholders' equity declined from approximately $1.434 billion at December 31, 2025 to approximately $326.4 million at June 30, 2026. (Q2 2026 10-Q at 1).

52. Cable One intends to fund the approximately $480 million Put Price using "existing cash balances, the anticipated available capacity under the Revolving Credit Facility at the time of the transaction and [Cable One's] operating cash flows." (Q2 2026 10-Q at 37).

53. In fact, Cable One recently drew down $500 million from the Revolving Credit Facility with which it intends to pay the MBI Put.

54. Upon information and belief, Cable One is currently negotiating with GTCR and others for $1.25 billion in new financing, which GTCR would provide following Cable One's payment of the MBI Put.

55. Upon information and belief, the proposed terms of this financing amount to predatory economics. The financing would involve a burdensome fee structure – all-in costs of approximately seventeen percent through September 2029, including a high interest rate – that would make any future refinancing materially more difficult and dooms Cable One to inevitably face a negotiated restructuring in which lenders agree to forego payment or to face bankruptcy proceeding.

**Absent Immediate Injunctive Relief, CoBank Will Suffer Irreparable Harm**

56. Upon information and belief, the MBI Put Closing is scheduled to occur by October 9, 2026, at which time Cable One would transfer $480 million to the GTCR investors.

57. Upon information and belief, the private investment funds receiving these proceeds will wind down and distribute the proceeds to investors, who will likely engage in further downstream transfers. By this point, the $480 million will be, as a practical matter, impossible to trace and recover.

58. Cable One is already insolvent based on application of standard valuation tests.

(a) Under a balance sheet assessment Cable One's current liabilities exceed its current assets;

(b) Under a capital buffer assessment, Cable One's currently lacks adequate capital;

(c) Based upon Cable One's recent financial performance, including the comprehensive loss of approximately $1.16 billion in the first half of 2026 and comprehensive loss of $385 million in fiscal year 2025, Cable One cannot and will not generate the net revenue that will enable Cable One to pay the loans it has currently outstanding on or before their due dates.

(d) Based on Cable One's recent financial performance, Cable One cannot and will not generate the net revenue that will enable Cable One to pay the loans it has currently outstanding on to CoBank or before their 2028 due dates.

59. Should Cable One transfer this $480 million, it will plunge further into insolvency.

(a) Cable One's current liabilities would exceed its current assets; and

(b) Cable One's would further lack adequate capital.

60. The MBI equity interest Cable One intends to buy is worth not more than $54 million, far less than the $480 million Cable One would transfer.

61. If the Put Price transfer is allowed to proceed, CoBank will be left to seek recovery from an insolvent obligor whose principal remaining assets are encumbered, whose value is declining, and whose ability to pay its creditors is rapidly diminishing. Cable One is trending towards a bankruptcy proceeding.

62. A money judgment against an insolvent Cable One would not provide an adequate remedy, as it could not return the parties to the position they previously occupied before the transfer of this $480 million.

63. The balance of hardships and the public interest favor preserving the status quo. A temporary restraining order and injunction pending adjudication of CoBank's claims will not deprive GTCR of any contractual remedy it may have against Cable One, whereas consummation of the transfer will irreversibly dissipate approximately $480 million of value available to Cable One's creditors, including CoBank.

**COUNT I**
**CLAIM FOR DECLARATORY JUDGMENT**
**(28 U.S.C. §§ 2201–2202)**

64. CoBank repeats and realleges each of the foregoing allegations as if fully set forth herein.

65. The Declaratory Judgment Act provides that, "[i]n a case of actual controversy within its jurisdiction," a federal court "may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a).

66. CoBank has made clear to Cable One that it objects to the payment of the MBI Put.

67. Cable One has reiterated its intention to pay the MBI Put by October 9, 2026.

68. The parties' adverse legal interests are significant, immediate, and real.

69. An actual, justiciable controversy exists between CoBank and Cable One concerning whether Cable One's payment of the approximately $480 million Put Price constitutes a transfer that violates and would be avoidable under the AFTA or DUFTA.

70. The controversy is ripe in light of the imminent MBI Put Closing.

71. CoBank is entitled to a declaration that Cable One's payment of the MBI Put, if made, constitutes a fraudulent transfer, as Cable One would make the transfer (i) without receiving reasonably equivalent value and (ii) while Cable One was insolvent or by which Cable One will be rendered insolvent or left with unreasonably small capital, and therefore violates and would be avoidable by CoBank under A.R.S. §§ 44-1004(A)(2) and 44-1005 or 6 Del. C. §§ 1304(a)(2) and 1305(a), as applicable.

72. A declaratory judgment will serve a useful purpose in clarifying and settling the legal relations at issue and will afford relief from the uncertainty and controversy giving rise to this proceeding. CoBank further seeks such "[f]urther necessary or proper relief based on a declaratory judgment" as is warranted, including injunctive relief. 28 U.S.C. § 2202.

**COUNT II**
**CONSTRUCTIVE FRAUDULENT TRANSFER**
**(A.R.S. §§ 44-1004(A)(2), 44-1005, and 44-1007; 6 Del. C. §§ 1304(a)(2), 1305(a), and 1307)**

73. CoBank repeats and realleges each of the foregoing allegations as if fully set forth herein.

74. CoBank is a "creditor" of Cable One, and CoBank holds a "claim" against Cable One, within the meaning of A.R.S. § 44-1001 or 6 Del. C. § 1301, by virtue of Cable One's obligations under the Credit Agreement in respect of CoBank's approximately $1.1 billion of Term Loans and revolver. CoBank's claim arose before the transfer at issue.

75. Cable One is a "debtor" within the meaning of A.R.S. § 44-1001 or 6 Del. C. § 1301.

76. Cable One currently is insolvent.

77. The payment of the approximately $480 million MBI Put is a "transfer" within the meaning of A.R.S. § 44-1001 and 6 Del. C. § 1301.

78. Cable One will not receive reasonably equivalent value in exchange for the transfer of $480 million.

79. Cable One has admitted the value the MBI equity to be acquired is worth a small fraction of the Put Price—based on the $426.0 million MBI option liability Cable One recorded against the approximately $480 million Put Price—and based upon Cable One writing down its existing MBI investment by $349.8 million to a carrying value of approximately $31.8 million.

80. Cable One's assets are unreasonably small in relation to the $480 MBI Put transaction and its business.

81. If Cable One were to make the $480 million MBI Put transfer payment, its remaining assets would be unreasonably small in relation to its business and the MBI Put transaction.

82. Upon information and belief, Cable One believes or is recklessly and willfully refusing to see the truth that if it makes the $480 MBI Put transfer, its debts will be beyond what it has the ability to pay as they become due.

83. Cable One has already drawn down $500 million from its revolving credit facility in order to pay the MBI Put and has stated its intention to acquire $1.25 billion in new financing, which it will not be able to pay when due if it pays its other liabilities and operating expenses.

84. If Cable One goes through with the $480 million MBI Put transfer, Cable One's insolvency will deepen.

85. Under A.R.S. § 44-1004(A)(2) and 6 Del. C. § 1304(a)(2), the transfer is avoidable because Cable One is making it without receiving a reasonably equivalent value in exchange, and Cable One (a) is engaged or is about to engage in a business or transaction for which its remaining assets are unreasonably small in relation to the business or transaction, or, alternatively, (b) intends to incur, or believes or reasonably should believe that it will incur, debts beyond its ability to pay as they become due.

86. Under A.R.S. § 44-1005 and 6 Del. C. § 1305(a), the transfer is avoidable as to CoBank, whose claim arose before the transfer, because Cable One is making the transfer without receiving a reasonably equivalent value in exchange and Cable One is insolvent at that time or will become insolvent as a result of the transfer. Cable One is or will be "insolvent" within the meaning of A.R.S. § 44-1002(A) or 6 Del. C. § 1302 because the sum of its debts is or will be greater than all of its assets at a fair valuation.

87. Cable One knew, or reasonably should have known, of its financial condition and of the disparity between the Put Price and the value of the MBI equity, which Cable One itself quantified and disclosed in its Q2 2026 10-Q.

88. CoBank will be harmed by the transfer because it will diminish, by approximately $480 million, the assets available to satisfy Cable One's obligations to CoBank and Cable One's other creditors and will deepen Cable One's insolvency and will leave it with unreasonably small capital.

89. Under A.R.S. § 44-1007(A) and 6 Del. C. § 1307(a), CoBank is entitled to an injunction against the transfer.

## PRAYER FOR RELIEF

WHEREFORE, CoBank respectfully requests that the Court enter judgment in its favor and against Cable One, and grant the following relief:

(A) A declaration that Cable One's payment of the approximately $480 million MBI Put is a constructively fraudulent transfer that violates and is avoidable by CoBank under A.R.S. §§ 44-1004(A)(2) and 44-1005 or, in the alternative, 6 Del. C. §§ 1304(a)(2) and 1305(a);

(B) A temporary restraining order, on an emergency basis and before the scheduled October 9, 2026 MBI Put Closing, pursuant to CoBank's separate motion for a temporary restraining order, enjoining Cable One from paying the Put Price or otherwise transferring cash or other property in connection with the Put Right, pending a preliminary injunction hearing;

(C) A preliminary injunction granting the relief described in paragraph (B) above pending final judgment in this action, pursuant to a motion for a preliminary injunction that CoBank will file separately;

(D) A permanent injunction enjoining Cable One from paying the Put Price or otherwise transferring cash or other property in connection with the Put Right;

(E) An award of CoBank's costs and expenses, including reasonable attorneys' fees, to the extent permitted;

(F) Pre-judgment and post-judgment interest as permitted by law; and

(G) Such other and further relief as the Court deems just and proper.

Dated: October 9, 2026

/s/ Scott M. Danner

Scott M. Danner
HOLWELL SHUSTER & GOLDBERG LLP
425 Lexington Ave
New York, NY 10017
Telephone: (646) 837-8530
Email: sdanner@hsgllp.com

James P. McLoughlin, Jr.
Christopher D. Tomlinson (pro hac vice forthcoming)
Sarah A. Sheridan
Jeffrey A. White
MOORE & VAN ALLEN PLLC
100 North Tryon Street, Suite 4700
Charlotte, NC 28202-4003
Telephone: (704) 331-1000
Facsimile: (704) 331-1159
Email: jimmcloughlin@mvalaw.com
christomlinson@mvalaw.com
sarahsheridan@mvalaw.com
jeffwhite@mvalaw.com

*Attorneys for Plaintiff CoBank, ACB*